HEMM v. GOODWIN.

Opinion delivered October 31, 1927.

1. VENDOR AND PURCHASER—RIGHT TO ENFORCE VENDOR'S LIEN.—An owner of land may contract in his conveyances to two different grantees for each of them, as a part of a consideration of the lands he separately conveyed to them, to pay any part or all of a prior mortgage upon said lands, and, upon the payment of the entire mortgage debt by one of his grantees, may enforce a vendor's equitable lien against the land sold to the other grantee for the proportion of the mortgage debt he agreed to pay as a part of the purchase money for the land he bought.

2. VENDOR AND PURCHASER—EQUITABLE VENDOR'S LIEN.—An equitable vendor's lien arises by operation of law out of a contract for the payment of purchase money.

3. LIMITATION OF ACTIONS—ENFORCEMENT OF EQUITABLE VENDOR'S LIEN.—As regards the plea of the statute of limitations, a vendor's right to enforce an equitable lien for the amount which the purchaser assumed on a mortgage as against the successor in title of such purchaser did not accrue until the successor in title of the purchaser of another tract, covered by the same mortgage, who had assumed full payment of the mortgage, had paid same.

4. TAXATION—LIEN FOR TAXES PAID.—A vendor having an equitable lien had a right to pay the taxes to protect his interest, and was entitled to a lien on the land for the amount he paid to redeem it from the tax sale.

5. INTEREST—AMOUNT ASSUMED ON MORTGAGE.—Where the purchaser of a 40-acre tract assumed $350 of a $500 mortgage on the land, and the mortgage was paid by the purchaser of another tract covered by the same mortgage, the vendor was entitled to interest only on $350, as against the successor in title of the 40-acre tract, from the time the mortgage was paid and the right of action accrued.

Appeal from Sevier Chancery Court; *C. E. Johnson,* Chancellor; reversed in part.

*Lake, Lake & Carlton,* for appellant.

*Steel & Edwards,* for appellee.

HUMPHREYS, J. The purpose of this suit is to enforce an alleged equitable vendor's lien for $350 and accumulated interest against a certain forty-acre tract of land in Sevier County, and the additional sum of $40.60 and interest, which was paid by appellee on November 13, 1922, to redeem said forty-acre tract of land from forfeiture to the State.

Appellants filed an answer, denying the right of appellee to an equitable lien upon said land for either amount. Appellants also interposed the defenses of the statute of frauds and limitations.

The cause was submitted to the chancery court of Sevier County upon the issues joined and the testimony introduced by the parties, which resulted in a decree in favor of appellee for $350 and interest at the rate of 6 per cent. per annum from June 29, 1916, and for $40.60 at the rate of 6 per cent. per annum from the 13th day of November, 1922, and the establishment of a vendor's lien for said amounts, and order of sale of said lands to satisfy same. From that decree an appeal has been duly prosecuted to this court.

Appellee owned 110 acres of land in said county, which he mortgaged to the Conservative Loan Company on June 29, 1916, payable eight years after date, and bearing interest at the rate of 6 per cent. per annum from date until paid. On the 3d day of August, 1917, appellee and wife executed and delivered to Z. Baldwin their warranty deed conveying said forty-acre tract to Z. Baldwin in consideration of $300 cash in hand paid and the assumption of $350 of the indebtedness to the Conservative Loan Company, which conveyance, as well as the mortgage aforesaid, was recorded at the time of the execution and delivery in proper record books in said county. On October 7, 1918, Z. Baldwin executed and delivered to W. O. Hobbs his warranty deed for said forty-acre tract, with lien retained, in consideration of $900, $200 in cash, notes for $350, and the assumption by said Hobbs of $350 of the indebtedness to the Conservative Loan Company, which deed was recorded shortly after the execution thereof in the proper record book in said county. On December 30, 1919, W. O. Hobbs conveyed by warranty deed said forty-acre tract to B. F. Coyle for a consideration of $1,400, $500 cash and notes payable to Hobbs for $550 and the assumption by Coyle of $350 of the indebtedness to the Conservative Loan Company, which deed was filed for record in the proper record book in said county a short

time after the execution and delivery of same. The
notes executed by Coyle to Hobbs were not paid at ma-
turity, Coyle having died intestate. Hobbs instituted suit
in the Sevier Chancery Court against the heirs of Coyle
to foreclose the amounts due him, evidenced by notes
which Coyle had given him, and, at the October term, 1922,
of said court a decree was entered in favor of Hobbs, and
the land ordered sold in satisfaction of the indebtedness.
On October 28, 1922, Hobbs assigned said judgment to
appellants without recourse on him. The land was sold
by the commissioner, and appellants became the pur-
chasers of same for the amount of judgment assigned to
them by Hobbs. The sale was reported to the court at
the October, 1923, term, at which time same was approved
and a deed executed and acknowledged by the commis-
sioner conveying said land to appellants.

On January 9, 1918, appellee and his wife executed
and delivered their warranty deed to Mary N. Thompson,
conveying the other seventy acres described in the mort-
gage to the Conservative Loan Company in consideration
of $1,400, $400 cash, $500 evidenced by notes payable to
plaintiff, and the grantee assuming the full amount of
the $500 note and mortgage to the Conservative Loan
Company, which deed was immediately filed for record in
said county in the proper record book.

On August 2, 1918, Mary N. Thompson and J. C.
Thompson, her husband, executed and delivered to C. S.
Tebbs their warranty deed, conveying said seventy-acre
tract in consideration of $2,000, $1,000 in cash, one note
for $500 payable to Mary N. Thompson, and the assump-
tion of the indebtedness to the Conservative Loan Com-
pany, which deed was immediately filed for record in said
county in the proper record book.

In the year 1924 C. S. Tebbs sold the seventy-acre
tract of land to J. S. Parson, who assumed and agreed
to pay the $500 mortgage to the Conservative Loan Com-
pany as a part of the consideration for the land. On June
2, 1924, Parsons paid $500 to the Conservative Loan Com-
pany. The release deed described and released the entire

110-acre tract from the Conservative Loan Company mortgage. After Parsons paid the $500 mortgage and obtained a release deed for the entire 110-acre tract of land, appellants refused to pay the $350 which the grantors in their chain of title had assumed and agreed to pay, and also refused to refund to appellee taxes in the sum of $40.60 which appellee was forced to pay to redeem the forty-acre tract from the sale of taxes for the years 1920 and 1921.

Appellants contend for a reversal of the decree upon the theory that the lien against the land, including the lien on the forty acres purchased by them, was discharged and extinguished by payment of the $500 mortgage by Parsons to the Conservative Loan Company. This payment did discharge and extinguish the mortgage lien for $500, but did not discharge and extinguish appellee's right to the balance of his purchase money of $350, which the grantors in the chain of appellant's title had contracted to pay for the forty-acre tract by the assumption of $350 of the $500 mortgage given by appellee to the Conservative Loan Company. Appellants purchased the forty-acre tract under a junior mortgage lien in favor of C. S. Tebbs, there being upon the forty-acre tract an equitable vendor's lien in favor of appellee by virtue of the assumption by appellants' predecessors in title of $350 of the Conservative Loan Company's mortgage even after the loan company's mortgage was paid by Parsons. Otherwise appellee would have received the initial cash payment of $300 for the forty-acre tract, whereas he sold it for $650, $300 cash and the assumption by Baldwin and the other grantors in the chain of appellants' title of $350 of the Conservative Loan Company's mortgage. There can be no question in this case that appellee sold the forty-acre tract for $650 to Baldwin and only received $350 of the purchase money, and that appellants' predecessors in title assumed the payment of the $350 in their respective deeds by agreeing to pay $350 of the Conservative Loan Company's mortgage as a part of the consideration for said tract.

We think it cannot be gainsaid that an owner of land may contract in his conveyances to two different grantees for each of them, as a part of the consideration of the lands he separately conveyed to them, to pay any part or all of a prior mortgage upon said lands, and, upon the payment of the entire mortgage debt by one of his grantees, to enforce a vendor's equitable lien against the land sold to the other grantee for the proportion of the mortgage debt he agreed to pay as a part of the purchase money for the land he bought. One who has acquired the estate of another by purchase should not be allowed to keep it without paying the entire contract price. An equitable vendor's lien arises by operation of law out of the contract for the payment of the purchase money. *Beard* v. *Bank of Osceola,* 126 Ark. 420, 190 S. W. 849.

In this view of the law the plea of the statute of frauds has no application to the facts in the case. This defense was interposed to meet the allegation and proof that appellee had an oral agreement with Baldwin to pay him the $350 in case the purchasers of the seventy acres of the tract should pay the entire mortgage debt to the Conservative Loan Company. Appellee was entitled to enforce a lien for the unpaid purchase price of the forty-acre tract by virtue of the provisions of the deeds of appellants' predecessors in title, irrespective of the oral agreement.

Under the law thus announced as applicable to the facts in the case, the plea of the statute of limitations must fall, as appellee's right to enforce his lien did not accrue until Parsons paid the entire mortgage indebtedness to the Conservative Loan Company. Parsons did not pay the mortgage debt and obtain the release deed until June 2, 1924, and appellee instituted this suit before his action was brought.

Appellants also contend for a reversal of the decree because the trial court subrogated appellee to the State's lien for the taxes paid. Appellee had an interest in the land, and had a right to pay the taxes to protect his interest. He was not a volunteer in the payment of the taxes,

hence is entitled to a lien on the land for the amount he paid to redeem it from the tax sale.

Appellants also contend that the court erred in allowing appellee interest from the date of the mortgage given by appellee to the Conservative Loan Company. They are correct in this contention. Appellee is only entitled to interest from the time his right of action accrued, and that did not accrue until Parsons paid the entire mortgage indebtedness.

The decree is affirmed except as to the excessive allowance of interest, and as to that is reversed and remanded for correction.